[Civ. No. 3303. Fourth Dist. Oct. 15, 1943.]

In re THE PEOPLES FINANCE AND THRIFT COMPANY OF SAN DIEGO (a Corporation), in Liquidation. THE PEOPLES FINANCE AND THRIFT COMPANY OF SAN DIEGO (a Corporation), Appellant, v. EDWIN M. DAUGHERTY, as Commissioner of Corporations, etc., Respondent.

Wright, Thomas & Dorman for Appellant.

Robert W. Kenny, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The Peoples Finance and Thrift Company of San Diego was organized in 1923 under the Industrial Loan Act of this state (Stats. 1917, chap. 522; Deering's Gen. Laws, 1937, Act 3603), as amended. Its capitalization was $150,000 and by 1941 it had outstanding investment certificates in the amount of $365,096.43.

On August 13, 1941, after auditing its books, the Commissioner of Corporations issued and served an order directing the corporation to make good within sixty days from the date thereof a deficiency and impairment of its capital in the approximate amount of $125,000, directing the corporation to employ a disinterested certified public accountant to make an audit and to report after determining the exact extent of the impairment of capital, ordering the corporation to cease from certain practices in connection with the making of loans, and further ordering it to show cause, on a certain date, why said order should not be observed and made final. Such a further audit and report was made, followed by a hearing at which findings of fact were made, and on September 30, 1941, the commissioner issued an order making the order of August 13, 1941, final, but amending the same by stating that the amount of the impairment of capital was $143,014.72.

During the month of October, 1941, the corporation applied for a license as a personal property broker and attempted to amend its articles of incorporation by deleting all reference therein to the Industrial Loan Act, by reducing its stated capital from $150,000 to $60,000, and by changing its corporate powers. Nothing further seems to have been done in either of these matters or with respect to eliminating the outstanding investment certificates which had been issued under the authority of the Industrial Loan Act.

On November 10, 1941, the commissioner prepared a written notice of taking possession of the property and business

of the corporation pursuant to section 11 of the Industrial Loan Act, which notice stated that this was being done because the corporation had failed to make good the impairment of its capital within sixty days of the requisition and order served upon it. On the same day, the commissioner designated one of his deputies to assist him in liquidating the affairs of the corporation. When this deputy presented this notice and attempted to take possession, on the afternoon of November 12, 1941, he was informed that in the forenoon of that day the corporation had filed a petition in the Superior Court of San Diego County setting forth that it had elected to voluntarily wind up its affairs and dissolve pursuant to the provisions of section 400 of the Civil Code and asking for court supervision of such dissolution under the provisions of section 403 of that code. The deputy commissioner was then served with a copy of the court order assuming supervision over such liquidation.

On January 30, 1942, the Commissioner of Corporations filed a petition in the proceeding in the superior court alleging, in general, the facts above stated and asking the court to terminate the proceedings which had been instituted by the corporation and to permit the commissioner to take possession of the property and business of the corporation as provided in section 11 of the Industrial Loan Act. In its answer thereto the corporation alleged, among other things, that the impairment of its capital did not exceed $65,000, and that it was in a solvent condition, and denied that under the statutes the commissioner had the right or authority to take possession of its property and business or to liquidate the same. After a hearing the court found in favor of the commissioner and entered a judgment vacating its prior order, and authorizing the Commissioner of Corporations to proceed with the liquidation of the affairs of the corporation as provided in the Industrial Loan Act. A motion for a new trial was denied and the corporation has appealed from that order and from the judgment.

It appears without question that this corporation's capital was seriously impaired and the main question presented is whether, under these circumstances, such a corporation has the right to dissolve voluntarily and liquidate its affairs. The appellant argues that it was solvent in the sense that it had

sufficient assets to pay all of its creditors, as distinguished from its shareholders, that the public is not interested so long as the corporation was discontinuing business, and that the same rule should be applied here as was applied in the case of *Daugherty* v. *Superior Court*, 56 Cal.App.2d 851 [133 P.2d 827]. In that case this court held that there was no inconsistency between the general power of supervision given to the Corporation Commissioner by the Industrial Loan Act and the power of supervision over voluntary dissolution given to the court by section 403 of the Civil Code, in cases where the corporation was solvent and had fully complied with all of the provisions of the loan act. We are here concerned not with the general power of supervision given to the commissioner by the Industrial Loan Act but with the more specific power and duty given him by section 11 of that act in a case where a corporation has allowed its capital to become impaired, or is failing to comply with the statutory or other requirements applicable to such a corporation. Section 11 of the Industrial Loan Act provides, among other things, that if the commissioner has reason to conclude that the capital of such a corporation is impaired he may by an order direct the corporation to make good the deficiency within sixty days of the date of such order, that he may also order the discontinuance of any unsafe or injurious practices, that such orders shall require the corporation to show cause why such orders should not be observed, and that such orders may be made final upon such a hearing and shall then immediately be complied with by the corporation. It is then provided that such a corporation shall have ten days after such order is made final in which to commence a suit to restrain enforcement of the order and that otherwise, upon failure of the corporation to comply with the order, the commissioner may take possession of the property and business of the corporation and retain such possession until the corporation resumes business or its affairs are finally liquidated. It is further provided that on taking possession the commissioner may proceed to liquidate the affairs of the corporation in the manner provided by the Bank Act.

The real question here is not as to any power of supervision in the court over the acts of the Commissioner of Corporations in liquidating such a corporation, but is as to whether the Commissioner of Corporations or the officers of such a

corporation shall have charge of the process of liquidation of such a corporation when its capital is impaired and it has failed to comply with the orders of the Corporation Commissioner. In effect, the appellant's contention is that while section 11 of the Industrial Loan Act would apply when such a corporation desires to go on doing business, it has no application where the corporation, being solvent, elects to dissolve and wind up its affairs. The statute does not so provide.

Under section 11 of the Industrial Loan Act the right of the commissioner to liquidate a delinquent loan company is made dependent not upon the solvency or insolvency of the corporation, but on the impairment of its capital or its violation of law and its failure to comply with the orders of the commissioner relating thereto within the period allowed. Under such circumstances, to permit such a corporation to elect to liquidate voluntarily instead of complying with the orders of the commissioner and to permit the officers of the corporation to remain in charge of the liquidation under the general provisions of the Civil Code, would be clearly inconsistent with the express terms of section 11 of the Industrial Loan Act. This is a special type of corporation, intentionally surrounded with safeguards not provided for general corporations and which were undoubtedly provided for the purpose of protecting the interests not only of creditors but of shareholders and all others interested in or affected by the business of such a corporation. Under the plain terms of the statute the commissioner is authorized, under the circumstances here appearing, to take charge of such a corporation and to liquidate its affairs in the manner provided by the Bank Act.

The appellant further contends that, in any event, the commissioner did not properly comply with the requirements of section 11 of the Industrial Loan Act in that the order of August 13, 1941, referred to an impairment of capital then existing in an approximate amount of $125,000 whereas the order of September 30, amended this by stating the deficiency as "the sum of $143,014.72." It is argued that had the appellant raised the $125,000 mentioned in the original notice it would have been required to raise an additional $18,000 under the order of September 30, 1941, and that with respect to this additional amount it would have had but thirteen days and not sixty days as provided for in the statute. It is also

argued that an erroneous basis was used in computing the amount of the impairment of capital in that certain reserve funds were not taken into account, with the result that the impairment of capital was only $80,505.90 instead of $143,-014.72.

The order of August 13, 1941, directed the appellant to restore "the deficiency and impairment of its capital presently existing" within sixty days from the date of that order. It also stated that the deficiency was in the approximate amount of $125,000. We think this was a sufficient compliance with the statute. The facts were known to, or available to, the officers of the appellant and the order contemplated that the exact amount of the deficiency should be determined by a further audit which was ordered made. The real effect of the order was to direct the corporation to restore such deficiency as actually existed. Regardless of whether the appellant would have been entitled to more time in which to restore the additional $18,000 it is not contended that any effort was ever made to restore any part of the deficiency or impairment of capital which admittedly existed. It may be further observed that even if the appellant was entitled to sixty days after the order of September 30, 1941, in which to restore its capital it did not do so within that time, or at all. The fact that the appellant started dissolution proceedings and applied for the supervision of the superior court under section 403 of the Civil Code before the commissioner took possession is not controlling. This was not a matter to be settled by a "race for the court house," and no offer or attempt was at any time made to replace or restore any part of the capital deficiency.

Under any view of the matter the appellant was not entitled to proceed with the voluntary liquidation of its affairs while refusing to comply with the orders made pursuant to section 11 of the Industrial Loan Act. It follows that the trial court acted correctly in setting aside its previous order whereby it had authorized and directed the appellant to proceed with the liquidation of its affairs under the direction of that court.

The attempted appeal from the order denying a new trial is dismissed, and the judgment is affirmed.

Marks, J., and Griffin, J., concurred.